# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JENNIFER KESTER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07cv00423 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. INTRODUCTION

Plaintiff Jennifer Kester suffers from certain physical and mental impairments, and consequently, she has sought financial assistance from the Social Security Administration. She brings this case challenging the Commissioner's conclusion that she is not under a "disability" as defined by the Social Security Act. As a result of that conclusion, the Commissioner denied Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income. (Tr. 18-27). The Commissioner's decision is subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), the administrative record, and the record as a whole.

Plaintiff seeks remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

## II. BACKGROUND

Plaintiff graduated from high school in 1990 and has vocational training as a dental assistant. She also attended a trade school for computer aided drafting. (Tr. 81, 482). Her past employment involved work as a dental assistant, graphic designer, a restaurant server, and in customer service. (Tr. 76, 88).

Plaintiff claims to be under a "disability" as defined by the Social Security Act due to bipolar disorder, severe depression and anxiety, Barrett's esophagus, and a full hysterectomy. (Tr. 75). In September 2002 she filed an application with the Social Security Administration seeking Disability Insurance Benefits (DIB), and on October 28, 20002, she filed an application for Supplemental Security Income (SSI). In both applications she asserted a disability onset date of November 26, 2001.

After various initial administrative proceedings, Plaintiff obtained a hearing before Administrative Law Judge (ALJ) David A. Redmond, who later issued a decision denying Plaintiff's DIB and SSI applications based on his conclusion that Plaintiff's impairments did not constitute a disability. (Tr. 18-27). At the time of the ALJ's decision, Plaintiff's age (34) placed her in the category of a person "younger person" for purposes of resolving her SSI and DIB applications. *See* 20 C.F.R. §§404.1563(c); 416.963(c); *see also* Tr. 51, 462.

During the ALJ's hearing, Plaintiff testified that she stopped working as a graphic designer in September 2002. (Tr. 483). She returned to work from June 20, 2003 through April 9, 2004 and did not work thereafter. (Tr. 501-02).

Plaintiff testified that she has undergone surgery on her esophagus and her stomach. (Tr. 484). She further testified that a bipolar disorder causes her "severe trouble." *Id*. She explained, "I have like real manic highs and ... low depression. I don't get out of bed for days and then if I, if I know I'm on a ... manic high, where they say that's from bipolar, then I ... can do a lot but then I, when I come down..., my moods aren't regular. The medication they're trying to get me on is, trying to regulate that." (Tr. 484).

Plaintiff testified that she cannot do very much housework other than keeping her area of the family room clean. (Tr. 498). She has one friend but does not speak with her. (Tr. 498-99). As to her daily activities, she wakes up at 9:00 a.m. and gets dressed. Her aunt might take her out to dinner. (Tr. 499). During a typical afternoon, she writes in her journal, uses the computer,

or watches television. *Id.*

The remaining significant information in the administrative record consists of medical records and the opinions of several medical sources.

Plaintiff began seeing Dr. Mesker, a family practitioner, in December 2001. (Tr. 358). Dr. Mesker treated her for irritable bowel syndrome and also prescribed psychotropic medications to treat her depression. (Tr. 277-307; 369-82; 406-20; 433-37).

In June 2004 Dr. Mesker opined that Plaintiff was markedly limited in several areas: carrying out detailed instructions, performing activities within a schedule, maintaining regular attendance, being punctual, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. (Tr. 356). Dr. Mesker believed that Plaintiff was moderately limited in her ability: to maintain attention and concentration, to work in coordination with others, to interact with the general public, and to respond to changes in the work setting. (Tr. 356). Dr. Mesker noted that Plaintiff had a severe depression, and she was emotionally labile, crying periodically each day. (Tr. 357). Dr. Mesker concluded, "In my opinion she is totally disabled from working at this time." *Id.*

Dr. Mesker also answered interrogatories in June 2004, opining that Plaintiff was significantly challenged when placed in any stressful situation. (Tr. 360). Dr. Mesker did not think that Plaintiff could perform the mental demands of work on a regular and continuing basis. (Tr. 359-64). He indicated that Plaintiff had slight restriction in her activities of daily living, marked difficulties in maintaining social functioning, and extreme deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner...." (Tr. 365).

On July 10, 2002, Plaintiff entered a psychiatric outpatient program. (Tr. 214). She saw psychiatrist Amita Patel, M.D., who diagnosed her upon admission with "major depression recurrent, severe [with] anxiety." (Tr. 197). Dr. Patel assigned Plaintiff a GAF of 35-40, *id.*, indicating a person with "some impairment in reality testing or communication ... or major impairment in several areas such as work or school, family relations, judgment...."[2] At that time,

---

[2] "GAF," Global Assessment Functioning, is an assessment of a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v.*

Plaintiff reported a sad mood with tearfulness, anxiety with occasional panic attacks, low motivation and energy, mood swings, irritability with recent episode of road rage, anhedonia, loss of appetite, and disturbed sleep. She also noted poor concentration. (Tr. 214). And she reported drinking two six packs of beer a week and smoking one marijuana joint daily. (Tr. 232).

Plaintiff attended outpatient group sessions, individual therapy and underwent a chemical dependency evaluation. (Tr. 219-29). On July 23, 2002, a counselor noted that Dr. Patel was recommending that Plaintiff attend Alcoholics Anonymous or Narcotics Anonymous meetings for additional support to help her to abstain. (Tr. 218).

From May 2003 through July 2003, Plaintiff was seen by Gil Butler, Psy.D., and Darla Kites, MSW, LSW, following a suicide attempt brought on by "binge" alcohol drinking. (Tr. 309-22). On August 4, 2003, Dr. Butler reported Plaintiff's mood and affect as depressed and flat. She was moderately anxious and showed some hesitation when recalling details. Dr. Butler thought that Plaintiff had poor judgment and insight. Dr. Butler diagnosed a dysthymic disorder but noted that counseling and Seroquel had been effective for Plaintiff. Her ability to remember, understand, and follow directions was good, but her ability to maintain attention was poor at times. She was anxious around people and withdrew from conversation. Plaintiff had an average ability to sustain concentration and persistence at tasks. With respect to the pressures of a work setting, Dr. Butler indicated that Plaintiff's ability would be good most days, poor some days. (Tr. 320-22).

From June 2004 to May 2005, Plaintiff received mental health counseling from Ms. Wiley, LSW. (Tr. 383-92, 421-32). Ms. Wiley initially diagnosed Plaintiff with bipolar disorder; depression, severe without psychotic features; generalized anxiety disorder; and cannabis abuse. (Tr. 391). She assessed Plaintiff's GAF at 45 indicating ""serious symptoms ... or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)...." DSM-IV-TR at p. 34.

Jaseem Pasha, M.D., a psychiatrist, treated Plaintiff from April 2005 to July 2005. (Tr.

---

*Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

4

422-26). In July 2005 he provided his opinions to the Ohio Bureau of Disability Determinations. (Tr. 441-58). Dr. Pasha found Plaintiff's judgment and insight were poor, and she showed only minimal improvement, despite multiple medications. Dr. Pasha thought that Plaintiff showed marked: restrictions of activities of daily living; difficulties in maintaining social functioning; and deficiencies of concentration, persistence, and pace. *Id*. In response to interrogatories, Dr. Pasha noted that Plaintiff experienced severe mood swings, impulsive unpredictable behavior, an inability to focus, poor attention span, and was unreliable. Dr. Pasha did not think that Plaintiff could perform any of the mental demands of work on a regular and continuing basis. (Tr. 441-49).

The record also contains the opinions of several non-treating medical professionals. Plaintiff was evaluated by a psychologist, Jayne Speicher-Bocija, Ph.D., on December 13, 2002. (Tr. 248-53). Dr. Speicher-Bocija diagnosed a mood disorder, not otherwise specified, and a personality disorder, not otherwise specified. She assigned Plaintiff GAF of 46. (Tr. 252). She noted that Plaintiff "has not worked since September of 2002 due to not being able to 'get through the day.' She recently lost custody of her son, is concerned about her significant other's drinking and stays in the house most of the date." (Tr. 252). Dr. Speicher-Bocija reported that Plaintiff "did state that she does not have patience with other people." (Tr. 253). She would have no problems comprehending simple work instructions, but she might experience difficulty remembering more complex directions; she would be able to perform repetitive tasks; she would not be productive in an environment with extended stress, although she can complete one task at a time. *Id*.

In February 2003 Caroline T. Lewin, Ph.D., a record-reviewing psychologist, indicated that Plaintiff suffered from an affective/mood disorder and a personality disorder. (Tr. 264, 267, 271). Dr. Lewin checked boxes on a form indicating her opinion that Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 274). Dr. Lewin saw no evidence of repeated episodes of decompensation. (Tr. 274). According to Dr. Lewin, Plaintiff appeared to retain adequate concentration but over an extended period of time may be distracted by others. (Tr. 262). Dr. Lewin opined that Plaintiff's stress tolerance shows some medium reduction. *Id*. Dr. Lewin further believed that Plaintiff remained mentally able to

5

handle simple instructions and tasks. (Tr. 262).

On August 19, 2003, Jean W. Branson, Ph.D., reviewed the record and checked boxes indicating her opinion that Plaintiff was "not significantly limited" (or had no limitation) in her ability to perform mental work activities in sixteen of twenty areas. (Tr. 323-41). Dr. Branson found Plaintiff to be "moderately limited" in the remaining four areas. *Id*. Dr. Branson explained that Plaintiff was "dysthymic but has responded to meds & counseling " and Dr. Branson opined that Plaintiff would work better in a setting in which she did not have to work with the public, and "[o]verall, memory, concentration, social interaction, and adaption were adequate for coping with a normal work period." (Tr. 326).

During the ALJ's hearing in August 2005, a record-reviewing psychologist, Dr. Buban, noted Plaintiff's history of "bipolar, depressed type, panic disorder without agoraphobia, treating for panic attacks, acute anxiety, depression, severe mood swings, impulsive, unpredictable behavior, not able to focus, poor attention span, not reliable." (Tr. 492). Dr. Buban stated, "Based on this record, I looked over the hospitalizations, both hospitalizations involved drinking alcohol and other medications, the misuse of medications. They seems [sic] to be related to a situational crisis. Her treatment has been, it's difficult to assess, a lot of her medications have been prescribed by the family physician. She had intermittent treatment with psychiatry." (Tr. 492). Dr. Buban then opined that Plaintiff's difficulties did not meet or equal a disability set forth in the Commissioner's Listings. (Tr. 492-98). Plaintiff, according to Dr. Buban, had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace. (Tr. 493). Dr. Buban further testified that Plaintiff would be limited to low stress situations. (Tr. 494). Dr. Buban, however, did not accept Dr. Mesker's opinion that Plaintiff had marked limitations in the area of concentration, persistence or pace because there is no clinical testing to support his assessment. (Tr. 490).

### III. ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are

both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

      Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[3] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 (the Listings)?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

      In the present case, the ALJ concluded at Steps 2 and 3 that Plaintiff has the severe impairments of depression and personality disorder but she does not have an impairment or combination of impairments that meet or equal the level of severity described in the Listings.

---

[3] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations. Plaintiff meets the insured-status requirement for DIB eligibility through December 2008. *See Colvin*, 475 F.3d at 730; *see also* Tr. 36.

(Tr. 26).

At Step 4 the ALJ found that Plaintiff had the Residual Functional Capacity to perform the basic exertional requirements ranging from sedentary to very-heavy work. The ALJ further found that Plaintiff's "ability to work in competitive employment is significantly affected by her mental impairments, and she is restricted to performing simple tasks featuring minimal personal contacts and low pressure for production." (Tr. 26). The ALJ then applied his assessment of Plaintiff's Residual Functional Capacity to conclude that Plaintiff was able to perform her past relevant work as a hand packager (although she could not perform her other past relevant work). (Tr. 27).

The ALJ's conclusion that Plaintiff retained the ability to perform work her past relevant work as a hand packager led him to stop his sequential evaluation before reaching Step 5 and to ultimately find Plaintiff not under a disability and hence not eligible for DIB or SSI. (Tr. 26-27).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did

not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

V.  **DISCUSSION**

Plaintiff presents the following main issue:

> Whether the administrative law judge erred as a matter of law in his evaluation of the opinions of the treating psychiatrist and the treating physician whether he failed to 'give reason' for rejecting these opinions and he failed to evaluate any medical source opinion under the factors described in the regulations?

(Doc. #8 at 1). Plaintiff specifically argues that the ALJ erred by rejecting the opinions of her treating family physician Dr. Mesker and her treating psychiatrist Dr. Pasha.

The Commissioner maintains that the ALJ gave "good reasons" for rejecting Dr. Mesker's opinion and properly rejected Dr. Pasha's opinions because her opinions were based on very little contact with Plaintiff.

Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source. *See* 20 C.F.R. §416.927(d). The required evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §416.927(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating

9

physician rule does not apply. *Id*.

Once the ALJ has concluded that the treating physician rule does not apply to a particular treating source's opinion, the evaluation has only just begun. The ALJ must continue to evaluate the treating source's opinion by considering several additional factors, specifically the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole; the specialization, if any, of the treating source; and other factors brought to the ALJ's attention. 20 C.F.R. §416.927(d)(2)-(6); *see Wilson*, 378 F.3d at 544.

As to non-treating medical sources – such as one-time examiners or medical experts who testify during the administrative hearing – ALJs must evaluate their opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §416.927(d), (f).

The ALJ rejected Dr. Mesker's opinion because Dr. Mesker was "a family practitioner and he is not certified in the area of mental health treatment." (Tr. 21). That Dr. Mesker is not "certified" in the area of mental health treatment is a proper factor to use in the evaluation of his opinions, but it is not the only factor. The Regulations required the ALJs to weigh Dr. Mesker's opinions under several additional factors, including the nature and extent of the treatment relationship, the supportability of the opinion, and the consistency of the opinion with the record as a whole must be considered. *See* 20 C.F.R. §§; 416.927(d)(2)-(4). The ALJ did not indicate in his decision that he considered any of these factors when weighing Dr. Mesker's opinions.

While Dr. Mesker is a family physician, he specifically treated Ms. Kester for her depression, and until Dr. Pasha took over prescribing psychotropic medications, Dr. Mesker prescribed these medications for her, adjusting them when the medications seemed inadequate. *See generally,* Tr. 277-307; 406-20; 433-73. Hence, while Dr. Mesker is not a psychiatrist and thus did not specialize in mental health treatment, his training and licensing as a family physician still made him qualified to treat and prescribe such medications for Plaintiff. In addition, the ALJ's rejection of Dr. Mesker's opinion for the sole reason he was not a "specialist," sidesteps the reason-giving requirements of the Regulations. The Regulations promise claimants not only an explanation but a "good explanation ... for the weight we give [the

claimant's] treating source's opinions." 20 C.F.R. §404.1527(d)(2).  As the United States Court of Appeals for the Sixth Circuit has explained, the reason-giving requirement accomplishes two goals:

> First, the explanation lets claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reasons for the agency's decision is supplied. Second, the explanation ensures that the ALJ applies the treating physician rule and permits meaningful appellate review.

*Rogers v. Commissioner*, 486 F.3d at 242-43 (quoting in part *Wilson*, 378 F.3d at 544) (internal punctuation omitted).  Because the ALJ merely applied one regulatory factor to reject Dr. Mesker's opinion, his decision was contrary to the reason-giving mandate set forth in the Commissioner's Regulations.

Turning to Dr. Pasha's opinions, the ALJ rejected her opinion "for the reason that it is not supported by medically-acceptable clinical findings.  It is also inconsistent with other substantial evidence in the case record." (Tr. 21).  The ALJ recognized that Dr. Pasha's opinion was inconsistent with the GAF score 55, indicating moderate symptoms, which Dr. Pasha had assigned.   The ALJ also found that the psychiatric progress notes failed to support Dr. Pasha's opinion because Plaintiff's thought processes were described as logical and she had no hallucinations, her affect was full, and she cooperated during the session.  (Tr. 21).

The ALJ's analysis falls short of the law.  His reliance, for example, on Plaintiff's GAF score is inappropriate.  In another context, the Commissioner has already recognized that the GAF is not an indication of nondisability for Social Security purposes. "The GAF scale, which is described in the DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association.  It does not have a direct correlation to the severity requirements in our mental disorders listings."  Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury,"  65 F.R. 50765 (Vol. 162, August 21, 2000). "Furthermore, the Commissioner 'has declined to endorse the [GAF] score for use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings....  The GAF scores, therefore, are not raw medical data and do not necessarily indicate improved symptoms

or mental functioning." *Kennedy v. Astrue*, 247 Fed.Appx. 761, 766 (6th Cir. 2007)(internal citations and punctuation omitted). In addition, as noted above, *supra* n.3, a GAF score merely represents a "snapshot" of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin*, 61 Fed.Appx. at 194 n.2 ; *see also* DSM-IV-TR at 32-34. As such, a GAF assessment is isolated to a relatively brief period of time, rather than being significantly probative of a person's ability to perform mental work activities on a full-time basis. The relative nature of such scoring is seen in Plaintiff's case because the administrative record contains other GAF scores from periods of time when her mental functioning had deteriorated well below the "moderate" level. The record includes a GAF of 35-40 on admission to a partial hospitalization program in July 2002 (Tr. 188), a GAF of 46 during a consultative examination in December 2002 (Tr. 252), and a GAF of 45 when evaluated in June 2004 (Tr. 391).

Further, the ALJ's recognition that Plaintiff's thought processes were logical and she had no hallucinations only speak to the fact that she did not experience any psychotic features to her illness. The absence of psychotic features says nothing significant about the impact her affective and anxiety-related disorders have on her ability to perform mental work activities. *See, e.g.,* Tr. 264, 328. The ALJ also ignored the findings that supported Dr. Pasha's opinion. For example, Dr. Pasha noted that on examination, Plaintiff was nervous, depressed, tearful, and cried several times during the session. Although Plaintiff was polite and cooperative, she reported that her mind raced, and Dr. Pasha observed that her speech was slightly pressured. Dr. Pasha noted that Plaintiff had poor concentration as evidenced by her inability to recall more than one object out of three in five minutes. (Tr. 451). An "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Cf. Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000;) *see Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *see also Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002).

The ALJ also claimed that Dr. Pasha's opinion was "based on uncritical acceptance of the claimant's subjective complaints and allegations," (Tr. 22), but the ALJ did not cite to any evidence to support this assertion. *See id*. It is not entirely clear what types of finding the ALJ wanted to see in Dr. Pasha's reports. Under the Regulations, the existence of a medically determinable impairment requires a statement of symptoms as well as psychiatric signs. "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological

12

abnormalities, *e.g.* abnormalities of behavior, mood, thought, memory, orientation, development, or perception, as described by an appropriate medical source." Listing §12.00B, Appendix 1, Subpart P, Part 404. The Sixth Circuit Court of Appeals has rejected the need for objective medical evidence to support a claimed mental impairment:

> [A] psychiatric impairment is not readily amenable to substantiation by objective laboratory testing as a medical impairment . . . Consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine ... In general, mental disorders cannot be ascertained and verified as are most physical illnesses ... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (citations omitted). In other words, while an ALJ is free under *Blankenship* to reject a psychiatrist's opinion, there must be some valid reason to do so, such as a reason to question the diagnostic techniques. In this case, the ALJ provided no such reason as a basis for rejecting to reject Dr. Pasha's opinions. The ALJ also felt that Dr. Pasha failed to address the impact of substance abuse on the severity of the claimant's mental condition. (Tr. 22). However, by the time Plaintiff saw Dr. Pasha in 2005 she was no longer drinking alcohol. She stopped drinking alcohol after it caused her to walk into a lake in an attempt to drown herself in May 2003. *See* Tr. 308-19, 389. The only reference to drinking after that point was when she used alcohol combined with medications to try to commit suicide in January 2004. (Tr. 459-61). Plaintiff also has a history of using marijuana. However, at most, she has only smoked one joint twice a month since 2003 or 2004. *See* Tr. 389.

Instead of relying on treating physician opinion, the ALJ relied on the opinion of the medical expert, Dr. Buban, who testified at the hearing. (Tr. 22). However, there is no

indication in the ALJ's decision that he applied the factors described in the Regulations to Dr. Buban's opinion, or to the opinions of the state examiners upon whom he also relied. *See* Tr. 20-22. This, too, was error, since in the absence of an opinion that deserves controlling weight, all medical source opinions, including the opinions of one-time examining physicians and record-reviewing physicians and medical experts who testify during administrative hearings must be weighed under the regulatory factors, including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1527(d), (f); *see also* Social Security Ruling 96-6p. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see* also 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

There remains the possibility, particularly in light of the Commissioner's arguments, *see* Doc. #10 at 10-16, that the ALJ's errors were harmless. Yet a review of Dr. Mesker's opinions and Dr. Pasha's opinions does not reveal that their opinions were "so patently deficient that the Commissioner could not possibly credit it...." *Wilson*, 378 F.3d at 547.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions of record are well taken and Plaintiff's request for a remand of this case should be granted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Jennifer Kester was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

January 14, 2009                  s/ Sharon L. Ovington
                                  Sharon L. Ovington
                         United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).